AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Oklahoma

FILED
FEB 21 2021
Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| In the Matter of the Search of<br>Facebook Profile ID brieanna.long.73 | )<br>)<br>)  Case No. 21-MJ-113-CDL<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

    See Attachment "A"

located in the __Northern__ District of __Oklahoma__, there is now concealed *(identify the person or describe the property to be seized)*:

    See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
    ☒ evidence of a crime;
    ☒ contraband, fruits of crime, or other items illegally possessed;
    ☐ property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1513(a)(1)(B) | Killing a Witness With Intent to Retaliate for Providing to a Law Enforcement Officer Information Relating to the Commission of a Federal Offense |

The application is based on these facts:
    **See Affidavit of FBI Special Agent Mark A. Wells, attached hereto.**

    ☒ Continued on the attached sheet.
    ☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

FBI Special Agent Mark A. Wells
Printed name and title

Sworn to before me and signed in my presence.

Date: __February 21, 2021__

_____
Judge's signature

City and state: Tulsa, OK     Tulsa, Oklahoma     U.S. Magistrate Judge CHRISTINE D. LITTLE
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID BRIEANNA.LONG.73 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 21-MJ-113-CDL<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Mark A. Wells, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since March 14, 2010. Since that time, I have conducted investigations on counter-terrorism matters and criminal matters such as wire fraud, bank fraud, child sexual exploitation, and violations of the Major Crimes Act. I have also attended the Federal Bureau of Investigation Evidence Response Team Basic Course, advanced Evidence Response Team courses, and have participated in the Oklahoma City Division Evidence Response Team since 2015.

3.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1513(a)(1)(B)- Retaliating against a witness, victim, or informant, have been committed by the owner of the information described in Attachment A. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE

5.  On January 13, 2021, the United States Marshal Services (USMS) Fugitive Task Force based out of the Northern District of Oklahoma assisted the Missouri USMS in the apprehension of David William Morris, a homicide suspect located in the Grove, Oklahoma, area. Information was received that the suspect was in a cabin located at 24800 South 630 Road Cabin #5, Grove, Oklahoma, within the Northern District of Oklahoma, and a full description and photograph of the suspect were shared with the Task Force. Information was also passed to the Task Force that the suspect had been seen in a silver Volkswagen Jetta, which was parked in front of the cabin.

6.  While Task Force Officers were surveilling the cabin, they observed a white male and white female exit the cabin and enter the Jetta. The female went to the driver's seat and the male who was wearing a stocking cap and a coat entered the passenger seat. Task Force

members were unable to ascertain if the male was the murder suspect and followed the vehicle away from the cabin.

7.  Task Force Officers initiated a traffic stop of the vehicle at Hwy 10 near 240 Road to determine if the male was the suspect they were looking for. After the car was stopped, officers ordered the male passenger out of the vehicle and placed him in restraints. The male passenger identified himself as "Kody," and he had a Missouri driver's license that showed the same information.

8.  Officers then had the driver step out of the vehicle. She was identified as Brylee O'Banion. O'Banion informed officers she was armed, and they recovered a Glock 43 pistol from her waistband.

9.  Officers conducted a search of the firearm's serial number through the National Crime Information Center (NCIC) database. The firearm showed to be stolen out of Missouri.

10. Officers then approached the vehicle to clear it for any other people, and in plain sight on the passenger floorboard was a black box containing baggies the officer associated with narcotics sales. A further search revealed the box contained multiple plastic baggies, a plastic baggie containing a key fob with battery, blue in color scales, a metal multi-colored grinder, a glass pipe with white residue inside, an orange in color butane lighter, a purple container containing THC six edibles, and a glass jar containing a THC edible.

11. Officer Green went back to the male subject and inquired about any other occupants of the cabin. The subject stated he did not know of anyone else in the cabin and said he "had the right to remain silent." Officer Green informed Randy Teague that he was being placed under arrest and asked if he had anything illegal on him that would be found in a search at the jail. The subject stated he had narcotics in his front watch pocket. Officer Green retrieved a

baggie of white crystal substance he identifies with methamphetamine. Officer Green noted the baggie the substance was in matched the baggies found in the vehicle.

12. Officers detained O'Banion, arrested the male occupant, and transported them to the Grove City Jail. During the transport, O'Banion told Task Force members the male subject's name was Randy and not "Kody." O'Banion said she knew Teague as an ex-boyfriend and he had come and picked her up last night. She said they were leaving the cabin en route back to Joplin. O'Banion finally told USMS members the homicide suspect was in the cabin. O'Banion stated while they were in the vehicle during the traffic stop, Teague had passed the firearm to her and instructed her to hold the pistol. O'Banion informed officers that Teague is a member of the Joplin Honkies (a gang in Joplin, MO) and is a convicted felon. O'Banion completed a statement for the USMS stating Teague had given her the firearm as they left the cabin and, when stopped, told her to place the firearm in her waistband and claim the firearm.

13. Once at the jail, officers identified the male as Randy Teague, date of birth 10/08/1982. USMS Deputy Gage had made contact with ATF Special Agent Brett Williams during the initial stop and again when Teague was identified. Special Agent Williams conducted a search of the NCIC database records for the criminal history of Teague. The NCIC showed Teague had prior felony conviction for 2nd degree burglary out of Barton County, Missouri, under case number CR6723441, and Stealing a motor vehicle out of Lawrence County, Missouri, under case number 39R04030070701.

14. On January 14, 2021, Special Agent Williams conducted a Nexus examination of the firearm and ammunition taken from Brylee O'Banion, but given to her by Randy Teague. Based upon the examination of the firearm and ammunition the following was found and in conjunction with the research, knowledge and experience of Special Agent Williams, it was his

4

opinion that the firearm and ammunition was manufactured outside of the State of Oklahoma, traveled, and affected interstate and/or foreign commerce. Further Special Agent Williams stated the firearm was classified as a "firearm" as defined in Title 18 United States Code Chapter 44, Section 921(a)(3) and the ammunition was classified as "ammunition" as defined in Title 18 United States Code Chapter 44, Section 921(a)(17)(A).

15. Based upon probable cause that Randy Teague had violated Title 18 U.S.C §§ 922(g)(1) and 924(d), a judicial complaint and an arrest warrant were issued for Randy Teague for Possession of a Firearm by a Previously Convicted Felon on February 1, 2021 in the Northern District of Oklahoma and filed as 21-MJ-74-JFJ.

16. Sometime between February 1, 2021 and February 20, 2021, someone using Facebook profile "Brieanna Alyn Long" posted on Facebook a copy of the 21-MJ-74-JFJ Complaint and Affidavit identifying Brylee O'Banion as an informant with the words "SNITCH" superimposed over the image in red letters. Also posted with the image were the words "What in the fuck. Snitches get stitches or put in ditches." An image of that screenshot was provided to me by ATF Special Agent Brett Williams as part of this investigation. A search of Facebook on February 21, 2021 revealed that the Facebook User ID for Facebook profile "Brieanna Alyn Long" was brieanna.long.73.

17. On February 20, 2021 at approximately 4:00 pm CST, human remains were discovered on the Missouri side of the state line between Oklahoma and Missouri in the vicinity of 3195 State Line Road, Quapaw, Oklahoma. The remains were badly burned and one arm had been amputated at the elbow. Based on my training and experience, and the training and experience of other officers who observed the remains, this appeared to be the result of

homicide. A thumb print from the human remains matched with the thumb print of Brylee O'Banion in the Automated Fingerprint Identification System.

18. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

19. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

20. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

21. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

22. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

23. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

24. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post

comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

25. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

26. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

27. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

28. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

29. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

30. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

31.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

32.    Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33.    As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence

is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

  34. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

35. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

36. Based on the foregoing, I request that the Court issue the proposed search warrant.

37. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

38. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

39. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

40. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Mark A. Wells
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _February 21_____, 2021

_____
CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook profile ID brieanna.long.73 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information for brieanna.long.73 including: full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.]]

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities from February 1, 2021 to February 20, 2021.

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them from February 1, 2021 to February 20, 2021, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from February 1, 2021 to February 20, 2021, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from February 1, 2021 to February 20, 2021;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 1513(a)(1)(A) (Retaliation Against a Witness, Victim, or an Informant) between February 1, 2021 to February 20, 2021, including, for each user ID identified on Attachment A, information pertaining to the following matters:

    (a) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

    (b) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

    (c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

   1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

   2. the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                                Signature